# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| GREGORY HUNT, ) | |
|     Plaintiff, ) | |
| ) | |
|     v. ) | CAUSE NO.: 2:13-CV-457-JEM |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
|     Defendant. ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Gregory Hunt on December 13, 2013, and Plaintiff's Brief in Support of His Motion To Reverse the Decision of the Commissioner of Social Security [DE 17], filed by Plaintiff on May 6, 2014. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On August 23, 2014, the Commissioner filed a response, and on September 8, 2014, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

## PROCEDURAL BACKGROUND

On June 29, 2011, Plaintiff filed an application for disability insurance benefits ("DIB") with the U.S. Social Security Administration ("SSA") alleging that he became disabled on June 22, 2011. Plaintiff's application was denied initially and upon reconsideration. On April 10, 2013, Administrative Law Judge ("ALJ") William E. Sampson held a hearing at which Plaintiff, with an attorney, and a Vocational Expert ("VE") testified. On May 16, 2013, the ALJ issued a decision finding Plaintiff was not disabled. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on October 21, 2013. *See* 20 C.F.R. § 404.981. Under 42 U.S.C. § 405(g), Plaintiff initiated this civil action for judicial review of the

Commissioner's final decision.

The ALJ made the following findings under the required five-step analysis:

1. The claimant has not engaged in substantial gainful activity since June 29, 2011, the application date (20 CFR § 416.971 et seq.).

2. The claimant has the following severe impairments: coronary artery disease; status post stent placement; hypertension; obesity and a history of alcohol abuse (20 CFR § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments in 20 CFR § Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has a the residual functional capacity to perform less than the full range of medium work as defined in 20 CFR 416.967(c). The claimant could lift/carry and push/pull occasionally 50 pounds and frequently 25 pounds; sit for a total of about six hours in an eight-hour workday and stand/walk for a total of about six hours in an eight-hour workday. The claimant could frequently climb, balance, stoop, kneel, crouch and crawl.

5. The claimant is capable of performing past relevant work as a dump truck driver (DOT 902.683-010) (unskilled SVP 2, medium). The work does not require the performance of work activities precluded by the claimant's residual functional capacity.

6. The claimant has not been under a disability, as defined in the Social Security Act, since June 29, 2011, the date the application was filed (20 CFR 416.920(f)).

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

Plaintiff was 57 years-old on the alleged onset date of disability. Plaintiff suffers from obesity, coronary artery disease, status post stent placement, hypertension, chronic obstructive

pulmonary disease, osteoarthritis and anxiety. In June 2011, Plaintiff suffered a heart attack. Dr. J. Sands conducted a state agency review in November 2011 in which he found Plaintiff could occasionally lift fifty pounds, could frequently lift twenty five pounds, could stand, walk, and/or sit about six hours in an eight hour workday. In December 2012, Plaintiff had to stop a treadmill exercise test, apparently due to limited exercise capacity. At the hearing, based on medium exertional limits placed by Dr. Sands, the VE testified that Plaintiff could perform his previous job as a dump truck driver.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses

3

the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable

4

physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. § 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functioning capacity ("RFC"), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

### A. Residual Functioning Capacity

Plaintiff argues that the Commissioner did not properly consider his impairments in combination in the RFC. The Commissioner argues that substantial evidence supports the ALJ's RFC findings.

The RFC is an assessment of what work-related activities the claimant can perform despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. § 404.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. § 404.1545(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the

> individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p at *7. Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young*, 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

Further, "[a]lthough [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing 20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)). In addition, "Social Security Ruling 02-1p requires an ALJ to consider the exacerbating effects of a claimant's obesity on his underlying conditions (even if the obesity is not itself a severe impairment) when arriving at a claimant's RFC." *Hernandez v. Astrue*, 277 F. App'x 617, 623-24 (7th Cir. 2008) (citing SSR 02-1p, 2002 WL34686281 (Sept. 12, 2002)) (other citations omitted); *see also Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) (finding that, even if obesity is not a severe impairment itself and

"merely aggravates a disability caused by something else[,] it still must be considered for its incremental effect on the disability").

In this case, the ALJ concluded that Plaintiff's obesity was a severe impairment, making it especially important that he consider the limitations caused by the combination. The ALJ does appear to have addressed obesity to some extent, writing: "The undersigned considered the impact obesity could have on the claimant's body systems, particularly his cardiovascular system, when limiting him to medium work with frequent posturals;" and, "However, taking into account the combination of the claimant's impairments including his obesity, the undersigned finds reducing the claimant's postural activities to be frequently." AR 27, 28. Despite some indication that the ALJ considered Plaintiff's obesity, it appears that the ALJ only considers it in relation to the cardiovascular system and possibly his musculoskeletal impairments. More significantly, its not clear to the Court that the ALJ considered Plaintiff's non-severe impairments, including chronic obstructive pulmonary disease, osteoarthritis and anxiety, in combination. Obesity exacerbates multiple aspects of health, including chronic diseases of the respiratory system such as Plaintiff's chronic obstructive pulmonary disease, chronic diseases of the musculoskeletal system such as Plaintiff's osteoarthritis, and mental health such as Plaintiff's anxiety. S.S.R. 02-1p, 2002 WL 34686281, at *3 (Sept. 12, 2002) ("Obesity may also cause or contribute to mental impairments such as depression. The effects of obesity may be subtle, such as the loss of mental clarity and slowed reactions that may result from obesity-related sleep apnea."). The combination of Plaintiff's non-severe impairments, even without considering their exacerbation by obesity, could change the ALJ's finding that Plaintiff can walk up to six hours in an eight hour workday. The Court is unable to determine whether the ALJ considered these impairments in combination and, if he did, how such

consideration was reflected in the ALJ's RFC. Accordingly, the Court remands for the ALJ to build a 'logical bridge' from the evidence to his conclusions in the RFC.

On remand, the ALJ is directed to consider the combination of Plaintiff's impairments, even those that are not severe in isolation, and to specifically address the impact his obesity and his mental health problems have on his ability to perform work.

**B.      Hypothetical to Vocational Expert**

Plaintiff argues that the ALJ did not adequately reflect the Plaintiff's limitation in concentration, persistence, and pace in his hypothetical to the VE. The Commissioner argues that unskilled work "presumably" would account for such limitations.

When an ALJ relies on testimony from a VE to make a disability determination, the ALJ must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Young v. Barnhart*, 362 F.3d 995, 1003 (7th Cir. 2004) ("a hypothetical question to the vocational expert must include all limitations supported by medical evidence in the record"); *Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers."). If the VE is unaware of all of the Plaintiff's limitations, he may refer to jobs the Plaintiff cannot perform, resulting in an incorrect disability determination. *Kasarsky*, 335 F.3d at 543.

Where there are limitations in concentration, persistence, and pace, these limitations must be incorporated into the hypothetical posed to the VE, although there is not "a per se requirement that this specific terminology ('concentration, persistence, and pace') be used in the hypothetical in all cases." *O'Connor-Spinner*, 627 F.3d at 619. A hypothetical that does not include these terms may

9

still be sufficient if it is "manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Id*.

In this case, the ALJ found that Plaintiff had "mild difficulties in maintaining concentration, persistence or pace," AR 24; however, it is not clear whether the ALJ included the limitation in his RFC, or if the VE's testimony would have been different if provided these limitations. The Commissioner's argument that Plaintiff's unskilled work addresses these limitations is unavailing. It is not clear to the Court how mild limitations in concentration, persistence, and pace translate into "unskilled work." The regulations define "unskilled work" as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). The ALJ did not provide any explanation for how the ability to sustain focused attention and concentration relates to the length of time it takes to learn a job, the defining characteristic of "unskilled work." *See Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (rejecting the contention "that the ALJ accounted for [the plaintiff]'s limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with co-workers or the general public"); *Young*, 362 F.3d at 1004 (concluding that a limitation of "simple, routine, repetitive, low stress work with limited contact with co-workers and limited contact with the public" was inadequate to take into account the claimant's limitations). The Court suggests that on remand the ALJ fully explain how he accounted for Plaintiff's mild limitations in concentration, persistence, and pace.

## CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Plaintiff's Brief in Support of His Motion To Reverse the Decision of the Commissioner of Social Security [DE 17] and **REMANDS**

this matter for further proceedings consistent with this opinion.

    SO ORDERED this 17th day of March, 2015.

s/ John E. Martin<br>
MAGISTRATE JUDGE JOHN E. MARTIN<br>
UNITED STATES DISTRICT COURT

cc: All counsel of record